The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCISCO ISLAS CASILLAS,

            Plaintiffs

      v.

CITY OF SEATTLE, a municipal corporation
and/or a political subdivision; and JOHN AND
JANE DOE ONE THROUGH 10, husband and
wife and their marital community,

            Defendants.

No.    2:15-cv-00790-TSZ

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Note on Motion Calendar:
**AUGUST 26, 2016**

**ORAL ARGUMENT REQUESTED**

## I.    RELIEF REQUESTED

       Defendant City of Seattle respectfully requests that the Court dismiss with prejudice all claims asserted in this matter.  As set forth more fully herein, Defendant asserts that summary judgment is appropriate on the following grounds: (1) Plaintiff cannot sustain any federal claims against Defendant as there is no evidence of an underlying constitutional violation, or evidence that Ortega-Baldis was acting under color of law or pursuant to a policy or practice; and (2)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(2:15-cv-00790-TSZ) - 1

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

Plaintiff fails to adduce evidence to state a negligence claim against Defendant under Washington state law as he fails to establish the requisite elements of duty and causation.

## II.  STATEMENT OF FACTS

As this is a motion for summary judgment, Defendant has set forth the facts in the light most favorable to Plaintiff. Defendant does not, however, necessarily adopt this version of the facts.

### a.  Events of February 20, 2012.

On February 20, 2012, Plaintiff was kidnapped, robbed, extorted and assaulted by three men, one of whom was Jessahel Ortega-Baldis aka Cesar Hernandez-Garcia (hereafter "Ortega-Baldis") in King County, Washington. (*See* Plaintiff's Complaint at Law, annexed to the Declaration of Cherie K. Getchell, dated August 4, 2016 (hereinafter "Getchell Decl.") at Exhibit "A"). At the time of this incident, Plaintiff owned a car repair shop, and had met Ortega-Baldis (whom he knew as "Fernando") on a previous occasion in his capacity as a mechanic. (*See* Deposition of Francisco Isles Casillas (hereafter "Plaintiff's Dep.") at 120:1-13, annexed to the Getchell Decl., at Exhibit B). At that time, Plaintiff was unable to fix Ortega-Baldis's car, and referred him to another mechanic. (Plaintiff's Dep., Getchell Decl., at Exhibit B, at 120:1-6). Prior to the events of February 20, 2012, Plaintiff witnessed an argument between Ortega-Baldis and Plaintiff's cousin, and had previously seen Ortega-Baldis driving in the area of his body shop. (Plaintiff's Dep., Getchell Decl., at Exhibit B, at 120:7-13).

Plaintiff testified that Ortega-Baldis called him on February 20, 2012, inquiring as to whether Plaintiff could repair his car. (Plaintiff's Dep., Getchell Decl., at Exhibit B, at 121:19-25) Plaintiff alleges that when he left his body shop to meet Ortega-Baldis to evaluate whether he could repair the car, Ortega-Baldis and two other men, whom he does not know, forced him into a van at gunpoint, where they tied his hands and feet and blindfolded him. (Plaintiff's Dep.,

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

Getchell Decl., Exhibit B, at 122:1-7, 123:4-124:11, 125:13-126:5, 129:9-18). Plaintiff testified that Ortega-Baldis threatened Plaintiff with guns, and seemed to be "high" at the time. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 127:10-128:4). Plaintiff testified that Ortega-Baldis threatened to kill him, and told him that he was being taken to see "the boss." (Plaintiff's Dep., Getchell Decl., Exhibit B, at 126:15-21). Plaintiff claims that he suffered injuries to his back when Ortega-Baldis pushed Plaintiff down between the middle passenger seat and the driver's seat to avoid Plaintiff from being seen. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 131:3-23, 132:9-16). Plaintiff testified he was further injured when the three men pushed him out of the van after they had driven around for "some time." (Plaintiff's Dep., Getchell Decl., Exhibit B, at 134:23-135:11). Plaintiff testified that he was thrown out of the van while still tied up, and was untied and unmasked while lying on the ground, before the three men left. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 135:25-136:25). At some point during the incident, Plaintiff's wallet was also taken from him, and kept by Ortega-Baldis so that he could investigate Plaintiff's family further, in case Plaintiff "did something." (Plaintiff's Dep., Getchell Decl., Exhibit B, at 137:10-20).

Plaintiff testified that Ortega-Baldis called him twenty minutes to a half an hour after, to ensure that he wasn't going to call the police. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 141:2-7). Ortega-Baldis then called Plaintiff a second time to ask if he could "get the money," which Plaintiff understood to be $20,000, in exchange for Ortega-Baldis not killing him. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 142:3-15). Ortega-Baldis then called him a third time, asking him to go to Seattle so that he could give Plaintiff back his wallet, as Ortega-Baldis was going to California, which Plaintiff declined to do. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 143:3-13). The last conversation Plaintiff had with Ortega-Baldis occurred while Plaintiff

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

was having lunch with his friend, Roberto, at which time Ortega-Baldis again demanded the $20,000 in exchange for not killing him. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 143:14-144:6). Plaintiff called the Federal Way Police after the fourth conversation with Ortega-Baldis. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 144:10-24). Plaintiff testified that the first time that he learned that Ortega-Baldis was a confidential informant for the Seattle Police Department was during a meeting with a Federal Way detective and an unknown prosecutor, in early to mid-June of 2012. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 146:18-147:2). Ortega-Baldis pled guilty to the underlying criminal charges, and Plaintiff believes he was sentenced to three and a half years in prison. (Plaintiff's Dep., Getchell Decl., Exhibit B., at 150:10-151:7).

On account of this incident, Plaintiff applied and received compensation from the Crime Victim's Assistance Fund. (Plaintiff's Dep., Getchell Decl., Exhibit B., at 67:2-8). Plaintiff claims to have suffered economic damages, as he was forced to close his body shop, fearing that the two other men who abducted him would return. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 152:25-153:25). Plaintiff now works as a roofer. (Plaintiff's Dep., Getchell Decl., Exhibit B, at 32:15-18). He is seeking monetary damages from the City of Seattle under claims of negligence and failure to supervise, as Ortega-Baldis had served as a confidential informant for the Seattle Police Department from 2006-2012, (Plaintiff's Complaint at Law, Getchell Decl., Exhibit A).

**b. Ortega-Baldis's Use by the Seattle Police Department as a Confidential Informant.**

Seattle Police Detective Marcos Diaz established Ortega-Baldis as a confidential informant in June of 2006. (*See* Deposition of Marcos Ortiz (hereafter Ortiz Dep.), annexed to the "Getchell Decl." at Exhibit "C", at 20:9-18, 45:23-23). Prior to signing him up, Detective Diaz ran numerous background checks on Ortega-Baldis through the following databases: the

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

National Crime Information Center, Washington Crime Information Center, Department of Licensing, Department of Corrections, and internal Seattle Police Department records. (Ortiz Dep., Getchell Decl., Exhibit C, at 36:1-38:21). The results of these searches were negative for any hits other than traffic violations. (Ortiz Dep., Getchell Decl., Exhibit C., at 36:22-23, 37:1-9, 37:14-15, 38:14-21). In addition to running these database checks on Ortega-Baldis, Detective Diaz and his supervisor, Sergeant Mike Devine, met with Ortega-Baldis. (Ortiz Dep., Getchell Decl., Exhibit C., at 23:20-24:4, 29:13-25, 32:10-17, 35:11-17) During his meeting with Ortega-Baldis, Detective Ortiz questioned him, ascertaining his character and motivations for wanting to serve as an informant, discovering what sort of information Ortega-Baldis had knowledge of and could offer, and explaining to him the requirements he would have to follow as a confidential informant. (Ortiz Dep., Getchell Decl., Exhibit C, at 24:12-25, 26:1-28:11, 30:4-31:16). Ortiz testified that Ortega-Baldis told him he was motivated to inform due to a concern he had for family members that were related to people involved in the drug trade, and that he would get paid for providing information. (Ortiz Dep., Getchell Decl., Exhibit C, at 24:21-25, 34:15-35:6).

Prior to working any operations or giving any information as a criminal informant, Ortega-Baldis signed a waiver which set forth a variety of conditions, including the following:

- o the informant has no police power and no authority to carry a weapon while performing informant activities;
- o the informant's association with the Seattle Police Department is on a case or time basis as an independent contractor and any payment received from the Seattle Police Department will not be subject to Federal or State Income Tax Withholding or Social Security. All reporting of income is the criminal informant's responsibility;
- o as an independent contractor, criminal informants are not entitled to Worker's Compensation or Unemployment Compensation from the State of Washington, and they cannot hold the City of Seattle liable for any injuries or damage incurred by reason of his or her association with SPD;
- o the informant agrees not to divulge to any person, except the investigator with whom he or she is associated, their status as an informant for SPD unless required

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(2:15-cv-00790-TSZ) - 5

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

to do so in court, and shall not represent themselves to others as an employer or representative of the Seattle Police Department;

o the informant agrees not to use SPD or any of its officers as credit references or employment references;

o the informant's association with SPD does not afford him or her special privileges and that they do not have the authority to violate any law and will be held responsible if they do so; and

o violation of any of the above provisions will be grounds for immediate termination and probable criminal charges.

(*See* English language Informant Agreement, annexed to Getchell Decl., as Exhibit "D").

Ortega-Baldis was provided a copy of this agreement in Spanish, his first language, which he initialed and signed on June 10, 2006. (*See* Spanish language informant agreement, signed by Ortega-Baldis, annexed to Getchell Decl., as Exhibit "E").

While Detective Ortiz established Ortega-Baldis as an informant, Seattle Police Department Detective (now Sergeant) Daniel Romero was Ortega-Baldis's handling detective, on account of Romero's ability to better understand Ortega-Baldis's particular Spanish language cadence, and that Detective Diaz's reserve unit was being mobilized, causing him to take a leave of absence from the police department. (*See* Ortiz Dep., Getchell Decl., Exhibit C., at 41:6-42:3).

Sergeant Romero testified that he worked with Ortega-Baldis on several successful drug operations. (*See* Deposition of Daniel Romero (hereafter Romero Dep.), annexed to the "Getchell Decl." at Exhibit "F", at 4023-41:25). Sergeant Romero further testified that he did not supervise Ortega-Baldis absent during when he was assisting on an operation. (*See* Romero Dep., Getchell Decl., Exhibit F, at 53:9-17). Sergeant Romero further testified that Ortega-Baldis would initiate contact with him when Ortega-Baldis had information, and that Ortega-Baldis did not report to anyone within the department. (*See* Romero Dep., Getchell Decl., Exhibit F, at 41:20-25, 52:9-11).

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

In 2009, Sergeant Romero applied for an immigration deportation deferral for Ortega-Baldis through the Department of Homeland Security, after learning that Ortega-Baldis had been arrested on a traffic citation. (*See* Romero Dep., Getchell Decl., Exhibit F, at 27:18-28:1, 47:16-48:5, 50:1-6). This request was approved by the Department of Homeland Security, and Ortega-Baldis was granted an immigration deportation deferral and one extension, and continued to provide information as a confidential informant thereafter. (See Romero Dep., Getchell Decl., Exhibit F, at 50:1-6).

Sergeant Romero learned of Ortega-Baldis' arrest for the underlying incident after receiving a phone call from Ortega-Baldis informing him that he had been arrested. (*See* Romero Dep., Getchell Decl., Exhibit F, at 54:1-14). Prior to this incident, Sergeant Romero was not unaware of, nor had Ortega-Baldis demonstrated, any violent tendencies, behaviors or propensities. (*See* Romero Dep., Getchell Decl., Exhibit F, at 83:12-18). Sergeant Romero classified Ortega-Baldis as a "problem informant" on account of the events of February 20, 2012. (*See* Romero Dep., Getchell Decl., Exhibit F, at 38:22-39:4).

### III.     PROCEDURAL HISTORY

Plaintiff filed this Complaint against the City of Seattle and ten John Doe and Jane Doe defendants in King County Superior Court on April 20, 2015. (*See* Complaint, *in* Verification of State Court Records, Dkt. #2, Attach. #1)  On May 20, 2015, the City filed a Notice of Removal to this Court. (*See* Notice of Removal, Dkt. #1)  Discovery in this case closed on June 30, 2016. The City now moves for summary judgment.

Plaintiff's Complaint alleges the following causes of action against the City arising under federal and Washington State law: (1) a municipal liability claim against the City based on a failure to supervise theory; and (2) state law claims based on theories of negligence.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(2:15-cv-00790-TSZ) - 7

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

# IV.    LEGAL AUTHORITY AND ANALYSIS

## A.  Summary Judgment Standard

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012).   The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24.  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts), but may simply point out that there is an "absence of evidence to support the nonmoving party's case."  *Id.* at 325; *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).   Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts that show a genuine issue for trial.  *Celotex*, 477 U.S. at 323–24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Arpin v.*

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).   Further, speculative and conclusory allegations are insufficient to overcome summary judgment.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

**B.      Plaintiff's Section 1983 Municipal Liability Claim Fails as a Matter of Law.**

To sustain an action under 42 U.S.C. § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional or statutory right.  *Wood v. Ostrander*, 879 F.2d 583, 587 (1989); *Rinker v. County of Napa*, 831 F.2d 829, 831 (9th Cir. 1987) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)).  As the Constitution protects individual rights only from government action, and not from private action, it is only when the government is responsible for the specific conduct complained of that individual rights are implicated. *Single Moms, Inc., v. Montana Power Company*, 331 F.3d 743, 746-47 (9th Cir. 2003).

> **1.      Plaintiff cannot demonstrate that Ortega-Baldis was acting under color of state law when his constitutional rights were violated.**

Whether Ortega-Baldis was acting under color of law is determinative as to the City's liability. The undisputed evidence shows that Ortega-Baldis was not acting under color of state law at the time the incident at issue occurred.  Ortega-Baldis was at no time an employee of the Seattle Police Department, rather, he was a confidential informant associated with SPD as an independent contractor on a case or time basis.   Further, the incident at issue was not related to

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

his work as an informant; it arose solely from Ortega-Baldis's independent, criminal conduct. There is no evidence that Ortega-Baldis was under the direction, control, or supervision of the Seattle Police Department at the time these crimes were committed.

While the Supreme Court has set forth four distinct tests for determining when the actions of a private individual amount to state action, as set forth more fully below, under no set of circumstances does Ortega-Baldis' criminal actions of kidnapping, assaulting and extorting the Plaintiff amount to state action.

### a. Ortega-Baldis's Criminal Acts Fail to Meet the Public Function Requirement.

Under the first test, the public function test, a private actor performs a public function if his activities traditionally have been the State's exclusive prerogative. *Perez-Morciglio v. Las Vegas Metropolitan Police Dept.*, 820 F. Supp. 2d 1100, 1106 (2011) (citing *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1214 (9th Cir.2002)). For example, holding elections, governing a town, or serving as an international peacekeeping force are traditionally exclusively the State's prerogative, and a private actor engaged in such activities will be held to be a state actor. *Id.* "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental." *Lee v. Katz,* 276 F.3d 550, 554-55 (9th Cir. 2002). Here, Ortega-Baldis committed criminal conduct, which is decidedly not a public function.

### b. Ortega-Baldis's Criminal Acts Were Not Encouraged by Defendant.

The second test, the "state compulsion test," will interpret a private actor's conduct as attributable to the government when it exerts coercive power over the private entity or provides significant encouragement. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170–71, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970) (state mandated segregation in private setting amounts to state

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

action), *overruled in part on other grounds.* In this case, there is no evidence that the Defendant required or had any role in Ortega-Baldis's actions against Plaintiff.

### c. Ortega-Baldis's Criminal Acts Occurred Outside of His Activities as an Informant.

The third test is the governmental nexus test. For a private party to act under color of state law under this test there must be "such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley v. Rainey,* 326 F.3d 1088, 1095 (9th Cir. 2003) (quoting *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n.,* 531 U.S. 288, 295, 121 S. Ct. 924, 148 L.Ed.2d 807 (2001)). Here Plaintiff has not shown that Defendant was entwined in any way with Ortega-Baldis's criminal conduct that gives rise to this case. The evidence indicates that Ortega-Baldis's actions against Plaintiff were purely individual, for which Defendant was not a participant. As such, there exists no governmental nexus.

### d. Ortega-Baldis's Criminal Acts Were Performed as a Private Party.

Under the fourth test, the joint action test, when a private party engages in a prohibited activity in concert with state actors, the private party is acting under the color of state law. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Florer v. Congregation Pidyon Shevuyim, N.A.,* 639 F.3d 916, 926 (9th Cir.2011). Courts consider whether the state has "so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley,* 326 F.3d at 1093 (quoting *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1486 (9th Cir.1995)). The Ninth Circuit requires a "substantial degree of cooperation

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

before imposing civil liability for actions by private individuals that impinge on civil rights." *Franklin v. Fox,* 312 F.3d 423, 445 (9th Cir. 2002). Plaintiff has not and cannot show that Defendant was in any way entwined with Ortega-Baldis's criminal conduct. Ortega-Baldis's criminal actions were independent of his work as a criminal informant. SPD did not participate nor condone Ortega-Baldis's criminal conduct, and it received no benefit from his criminal conduct.

Given that Plaintiff's § 1983 claim cannot survive under any of the tests articulated above, Ortega-Baldis, a private actor, cannot be found to have been acting under color of state law when he committed the crimes against Plaintiff. Accordingly, summary judgment dismissal is appropriate for Plaintiff's constitutional claims.

### 2. Any Municipal Liability Claim Fails as a Matter of Law.

Even if Plaintiff could succeed in showing that Ortega-Baldis acted under color of law, his claim under 42 U.S.C. § 1983 still fails, as Defendant cannot be held liable for the actions of its employees pursuant to a theory of vicarious liability or respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, Defendant can only be held liable where "it has an official policy or pervasive custom that causes a violation of a plaintiff's federal civil rights." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff can make this showing in one of three ways: by pointing to a custom or policy that led to the injury, by pointing to an injury caused by an action taken in the official capacity of a policymaker, or by showing that a policymaker ratified a subordinate's unconstitutional act. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Simply identifying a custom or policy is insufficient; rather, Plaintiff must also prove that this custom or policy was the cause of the purported constitutional violation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012). Proof of isolated incidents of

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

unconstitutional behavior by employees is insufficient to establish a municipal policy or custom. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). "Instead, it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that [make] the government as an entity responsible under § 1983." *Monell*, 436 U.S. at 694.

As a preliminary inquiry, in order to proceed on a municipal liability claim against the City, Plaintiff must first prove a violation of his constitutional rights. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Wyant*, 2010 WL 128389, at *5. As Plaintiff has failed to establish an underlying constitutional violation, his municipal liability claim against Defendant fails.

### a. Plaintiff Lacks Evidence to Support a Claim of Failure to Supervise.

While Defendant argues that Plaintiff's constitutional claim fails for the above deficiencies, Plaintiff's municipal liability claim for failure to supervise fails independently for lack of evidence. In order to succeed on a claim of failure to supervise, Plaintiff must demonstrate that the City has a policy or custom of inadequately supervising its confidential informants, that this inadequate supervision amounts to deliberate indifference, and that this deliberate indifference "actually caused" the constitutional deprivation at issue. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1988). Therefore, liability for failure to supervise under § 1983 cannot be based upon an allegation of mere negligence or even gross negligence. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 976 (9th Cir.2011). To proceed on such a claim, Plaintiff must show that the municipality acted with "deliberate indifference" to the Plaintiff's rights. *Wood*, 879 F.2d at 588. "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipality made a deliberate or conscious choice to disregard a

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

known or obvious consequence of its acts or omissions. *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997). "[A] failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). "Mere negligence in . . . supervision, however, does not give rise to a *Monell* claim." *Id.*

Further, even if Plaintiff can demonstrate a deficiency, a single instance is insufficient to show municipal liability. There generally must be a showing of widespread abuse or a pervasive pattern of police misconduct to give rise to liability under § 1983 for failure to supervise. *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir.2012) (holding that proof of single inadequately-trained employee was insufficient; there must be "widespread" practice); *Doughtery v. City of Covina*, 654 F.3d 892, 899 (9th Cir.2011) ("Mere negligence in training or supervision … does not give rise to a *Monell* claim.").

Plaintiff has not adduced evidence of a failure to supervise, let alone that a failure to supervise was sufficiently inadequate to rise to the level of deliberate indifference. As such, his failure to supervise claim should be dismissed. *See*, *e.g.*, *id.* at 901 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (granting motion to dismiss failure to supervise claim where the plaintiff failed to allege "'enough facts to state a claim for relief that is plausible on its face.'"). To permit Plaintiff's § 1983 claim to go forward against Defendant in this case would result in de facto *respondeat superior* liability, a result clearly rejected in *Monell*.

C.    **Plaintiff's State Law Negligence Claim Fails as a Matter of Law.**

    1.    **Plaintiff cannot demonstrate that the City owed him a duty.**

To establish a negligence claim, there must be evidence to demonstrate the existence of a duty to the Plaintiff, a breach of the duty, and an injury to the Plaintiff proximately caused by the

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

breach. *Estate of Bordon v. Dep't of Corr.*, 122 Wn. App. 227, 235, 95 P.3d 764 (2004), *review denied*, 154 Wn.2d 1003, 114 P.3d 1198 (2005). An essential element in any negligence action is the existence of a legal duty which the defendant owes the plaintiff. *Louie v. United States*, 776 F.2d 819, 824 (9th Cir. 1985) (citing *Petersen v. State*, 100 Wn. 2d 421, 425-46, 671 P.2d 230, 236 (1983)).

As a general rule, Washington state common law imposes no duty to prevent a third person from intentionally harming another. *See Sheikh v. Choe*, 156 Wn. 2d 441, 448, 123 P.3d 574 (2006) (citing RESTATEMENT (SECOND) OF TORTS § 315). Further, under the public duty doctrine, a municipality is not liable for its negligent conduct even where a duty does exist unless the duty was owed to the injured person and not merely the public in general. *Taylor v. Stevens County,* 111 Wn.2d 159, 163, 759 P.2d 447 (1988).

Washington courts recognize the "special relationship" exception to both these general rules. *See Sheikh*, 156 Wn. 2d. at 448. This exception applies to "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *See Sheikh*, 156 Wn. 2d. at 448 (citing *Taggart v. State*, 118 Wn. 2d 195, 219, 822 P.2d 243 (1992)). Here, there simply is no evidence of a "definite, established and continuing relationship between the defendant and the third party" for such a duty to apply. *Id.* at 219. Further, there was no authority to regulate Ortega-Baldis's movements or require him to report to Defendant. The "take charge" duty found as it concerns parolees and probationers applies only as the entity has the authority to control. *See, e.g., Osborn v. Mason County* (county did not "take charge" of a released sex offender because it had no authority to control him); *Couch v. Dep't of Corrs.*, 113 Wn. App. 556, 571, 54 P.3d 197 (2002) (finding that

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

held that the DOC did not have a "take charge" relationship with a sex offender at the time the sex offender murdered the plaintiff because "it had authority to monitor Davis for legal financial obligations only, it lacked authority to monitor Davis for future criminal behavior; and if DOC lacked the ability to monitor Davis for future criminal behavior, it was not participating in a "take-charge" relationship of the kind that *Taggart* and its progeny require.").

Plaintiff has presented no evidence that any employee of Defendant had a "definite, established, and continuing relationship" with Ortega-Baldis, or that Defendant knew that Ortega-Baldis had dangerous propensities posing a reasonably foreseeable danger to others. More importantly, Defendant did not "take charge" of Ortega-Baldis because it had no authority to control him outside of his activities as a confidential informant. Further, it had no "special relationship" duty to protect or warn the Plaintiff because the Plaintiff was not a foreseeable victim of Ortega-Baldis.

2.     **Plaintiff Has Not Adduced Sufficient Evidence to Succeed on a Claim  of Negligent Selection.**

Plaintiff fails to present any evidence supporting his claim for negligent supervision. He fails to present any evidence pointing to knowledge on the part of Defendant that Ortega-Baldis was unfit at the time he was established as a confidential informant, or that Defendant knew Ortega-Baldis presented a risk of danger to others. While Plaintiff's Complaint alleges that Ortega-Baldis was a member of a drug cartel, that his family had ties to the Mexican Mafia at the time of his employment, and he is believed to have committed crimes in King County before becoming an informant, no such evidence exists to support these conclusory allegations. That Ortega-Baldis may have had connections to criminal activity is not enough to succeed on this claim. Indeed, a number of courts have noted that confidential informants are frequently of

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

doubtful character and are usually individuals with prior criminal records who have engaged in criminal activity, and are thus able to put undercover police officers in contact with known drug dealers and other criminals. *See Jones v. City of Hialeah*, 368 So. 2d 398 (1979); *United States v. Simpson*, 813 F.2d 1462, 1470 (9th Cir. 1987) ("It is unrealistic to expect law enforcement officers to ferret out criminals without the help of unsavory characters.").

Similarly, Plaintiff has no evidence regarding any standard of care for selecting confidential informants, let alone evidence that that Defendant breached such standard. Defendant conducted background checks prior to utilizing Ortega-Baldis as a confidential informant, the results of which were all unremarkable. Ortega-Baldis served as a confidential informant on a case by case basis, providing information when he wanted to, whose involvement in the operations consisted of making contact with drug dealers, or providing information concerning drug crimes, but who had not committed any violent or serious offenses prior to the events of February 20, 2012. Defendant's use of Ortega-Baldis as an informant was contingent upon Ortega-Baldis's compliance with the guidelines set forth in the waiver that he signed. This was reasonable care by the part of Defendant in selecting Ortega-Baldis. *Slagle v. United States of America*, 612 F.2d 1157, 1162 (9th Cir. 1980) (affirming lower court's finding that the government used reasonable care in selecting informant, where informant had not committed any serious crimes); *Estate of Harb v. King County Sheriff's Office*, 162 Wn. App. 1028 (2011) (granting summary judgment on negligent supervision claim where the record did not show that the sheriff's office knew or should have known that deputy would enable his roommate to commit murder with his loaded gun).

**3. Plaintiff Cannot Establish Proximate Cause.**

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(2:15-cv-00790-TSZ) - 17

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

Even assuming that Plaintiff has an otherwise actionable negligence claim, this claim still fails for a lack of proximate cause. Proximate cause is a necessary element for Plaintiff to succeed on his state claims, consisting of cause in fact and legal causation. *Hartley v. State*, 103 Wash.2d 768, 777 (1985). "Cause in fact, or 'but for' causation, refers to 'the physical connection between an act and an injury.'" *Ang v. Martin*, 154 Wash.2d 477, 482 (2005) (quoting *Hartley*). While cause in fact is typically a question of fact for a jury, "legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wash.2d 468, 478 (1998); *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wash.2d 190, 204 (2001). The analysis of legal causation focuses on whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. The determination of legal liability depends on "mixed considerations of logic, common sense, justice, policy, and precedent." *Schooley*, 134 Wash.2d at 479 (quotation omitted).

### a. Ortega-Baldis' Criminal Act was an Intervening Cause.

Here, Ortega-Baldis's criminal activity was an intervening cause shielding Defendant from liability. "A defendant's conduct is not a proximate cause if, although it otherwise might have been a proximate cause, a superseding cause intervenes. According to both the Washington courts and the Restatement, '[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" *State v. Meekins*, 125 Wash. App. 390, 397–98 (2005). According to those same entities, "[a]n intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." *Id.*

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

Applying these principles here, it is evident that as a matter of law, Ortega-Baldis's private actions were intervening causes which preclude any City liability. In this case, Ortega-Baldis was established as a confidential informant to assist the Seattle Police Department in the investigation of drug activity and arrest of drug dealers. Kidnapping, assault, robbery and extortion were not a part of Ortega-Baldis's duties as a confidential informant. Ortega-Baldis's informant duties were performed purely on a case by case basis. Further, Ortega-Baldis acted in concert with two other private individuals in committing the crimes against Plaintiff, and at no time during the incident did Ortega-Baldis invoke his status as an informant. Plaintiff has no evidence to show that Defendant could have foreseen Ortega-Baldis's actions, which would establish the necessary causal link between the Defendant and Plaintiff's injuries. It is simply too remote and unforeseeable to impose liability on Defendant for Ortega-Baldis's violent crimes.

**D.      The John Doe and Jane Doe Defendants Must Be Dismissed from this Action.**

Plaintiff has not identified any individual defendant in this lawsuit, failing to substitute a specified individual for the John and Jane Doe defendants he named at the outset. A plaintiff must name all intended defendants in the caption of his complaint or any superseding amended complaint. *See Ferdik v. Bonzelet,* 963 F.2d 1258, 1262 (9th Cir.1992). Failing to name and serve all defendants in the complaint denies this Court with jurisdiction over the unnamed defendants. Fed.R.Civ.P. 4(m); *see e.g., Crowley v. Bannister,* 734 F.3d 967, 974–75 (9th Cir.2013) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed.R.Civ.P. 4.") (internal quotation marks and citations omitted). Generally, absent good cause, a court must dismiss any defendant who is not served within 120 days after the complaint is filed. Fed.R.Civ.P. 4(m) (stating even if the plaintiff can

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

show cause for failure to serve, the court may only extend the time for service for an *appropriate period*) (emphasis added). The use of "John Doe" to identify a defendant is not favored in the Ninth Circuit. *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.1980).

Plaintiff has failed to amend his Complaint to identify any of these unnamed Defendants, despite having been afforded more than enough time to designate the identities of the Doe Defendants. Thus, Defendant requests that this Court dismiss the ten John and Jane Doe Defendants.

## IV.     CONCLUSION

Based on the foregoing, the City respectfully requests that the Court grant summary judgment on the claims alleged against it in the Complaint.

DATED this 4th day of August, 2016.


Respectfully submitted,

PETER S. HOLMES
Seattle City Attorney


By:      */s/ Cherie Getchell*
Cherie Getchell, WSBA #49768
Assistant City Attorney
cherie.getchell@seattle.gov

***Attorney for Defendant City of Seattle***

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200

**CERTIFICATE OF FILING/SERVICE**

I certify that on the 4th day of August, 2016, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Counsel for Plaintiff:*

Glenn K. Carpenter, Jr., gcarpenter@gkcarpenter.com

*Counsel for Defendant, City of Seattle:*

Andrew Myerberg, andrew.myerberg@seattle.gov

Cherie Getchell, cherie.getchell@seattle.gov

DATED this 4th day of August, 2016.

/s/ Cherie Getchell
Cherie Getchell, WSBA #49768
Assistant City Attorney
cherie.getchell@seattle.gov

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(2:15-cv-00790-TSZ) - 21

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
(206) 684-8200