UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCISCO ISLAS CASILLAS,

    Plaintiff,

v.

CITY OF SEATTLE, et al.,

    Defendants.

C15-790-TSZ

ORDER

THIS MATTER comes before the Court upon defendant City of Seattle's (the "City") motion for summary judgment, docket no. 23. Having reviewed all papers in support of, and in opposition to, the motion, the Court enters the following Order.

## Background

Plaintiff Francisco Islas Casillas was kidnapped, robbed, extorted and assaulted by a group of men which included a man named Jessahel Ortega-Baldis. Plaintiff owned a car repair shop and had met Ortega-Baldis when Ortega-Baldis came into his shop in December 2011. Getchell Decl., docket no. 24, Ex. B (Casillas Tr. 120:1-13). Casillas referred Ortega-Baldis to another mechanic and had no contact with him until February 2012. As Casillas was closing his shop on February 20, 2012, he received a phone call

ORDER - 1

from Ortega-Baldis asking Casillas to see if he could repair Ortega-Baldis's car. *Id.* at 121:19-25. However, once Casillas went outside to review the car, Ortega-Baldis drew a firearm and forced Casillas into a van containing at least two other men armed with assault rifles. *Id.* at 123:4-124:11. These men handcuffed and blindfolded Casillas and began driving north on the I-5. *Id.* at 125:13-126:4. Ortega-Baldis repeatedly threatened to kill Casillas and told Casillas that he was bringing Casillas to see "the boss." *Id.* at 126:15-21. Casillas believed the men to be intoxicated by both alcohol and drugs. *Id.* at 127:10-20. After driving for a time, the men dropped Casillas off at a repair shop, taking everything but his phone, telling him to count to 50 before he moved. *Id.* at 134:23-135:11. Ortega-Baldis told Casillas that he was keeping the phone so Ortega-Baldis "could investigate my family further in case I did something." *Id.* at 137:15-20.

Ortega-Baldis called Casillas approximately 30 minutes after throwing him out of the van to ensure Casillas would not go to the police. *Id.* at 141:2-7. Ortega-Baldis called again at some point thereafter, demanding $20,000, which Casillas took to be in return for Ortega-Baldis not killing him. *Id.* at 142:3-15. Casillas then received another call from Ortega-Baldis, inviting him to meet in Seattle so Ortega-Baldis could return Casillas's wallet. *Id.* at 143:3-13. Casillas's last interaction with Ortega-Baldis came when Casillas was having lunch with a friend and Ortega-Baldis came up and demanded $20,000 in return for not killing Casillas. *Id.* at 143:14-144:6. Casillas learned that Ortega-Baldis was a confidential informant for the Seattle Police Department. *Id.* at 144:10-24; 146:18-147:2. Casillas subsequently learned that Ortega-Baldis pleaded guilty to criminal charges and was sentenced to approximately three and a half years in

prison. *Id.* at 150:10-151:7. Casillas has since ceased operating the repair shop out of fear of retaliation by the two other men and now works as a roofer. *Id.* at 152:25-153:25.

Ortega-Baldis's involvement with the Seattle Police Department began in 2006 when Detective Marcos Ortiz received a notice that Ortega-Baldis was interested in becoming an informant. Getchell Decl., docket no. 24, Ex. C (Ortiz Tr. 20:9-23). Ortiz ran a number of searches on Ortega-Baldis in various criminal databases, but found nothing beyond minor traffic tickets. *Id.* at 36:1-38:21. Ortiz also met Ortega-Baldis. *Id.* at 23:20-24:4. Ortiz inquired as to Ortega-Baldis's motivation for serving as an informant, with Ortega-Baldis responding that he was afraid for some of his relatives that were involved in the drug trade. *Id.* at 24:19-25. When signing Ortega-Baldis up as an informant, Ortiz furnished him with an agreement which stipulated, among other things, that his "association with SPD does not afford him or her special privileges and that they do not have the authority to violate any law and will be held responsible if they do so." Getchell Decl., docket no. 24, Ex. D.

Once Ortega-Baldis became an informant, he worked with Detective Daniel Romero. Romero testified at deposition that Ortega-Baldis assisted in several investigations by setting up drug purchases. Getchell Decl., docket no. 24, Ex. F at 40:23-41:25. While he was an informant, Ortega-Baldis did not report to anyone at the Seattle Police Department and was not supervised by Romero except for the times they worked together on an investigation. *Id.* at 52:9-11; 53:9-17. Romero testified that until Ortega-Baldis was arrested in 2012 following his assault of Casillas, Ortega-Baldis had not demonstrated any violent tendencies or propensities. *Id.* at 83:12-18.

Casillas originally filed this action in King County Superior Court in April 2015. Docket no. 2, Ex. 1. The City removed it to this Court. Casillas's Complaint alleges: (i) municipal liability under 42 U.S.C. § 1983 for failure to supervise Ortega-Baldis and (ii) a state law claim of negligence. The City has moved for summary judgment as to both claims. In his response, Casillas concedes that summary judgment is warranted as to the municipal liability claim under § 1983 and that claim is DISMISSED with prejudice.[1]

**Discussion**

**A.     Standard of Review**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the

---

[1] Casillas additionally moves to remand this action because there is no longer a basis for jurisdiction. However, the Court will exercise supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367. This case has been pending in federal court for more than a year, discovery is complete and to remand the case to state court would allow the plaintiff to litigate claims which have no merit. Defendant is entitled to have these claims addressed at this time in connection with its motion for summary judgment.

ORDER - 4

non-moving party, summary judgment is warranted. *See Celotex*, 477 U.S. at 322 (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

**B.     Analysis**

Casillas's remaining claim is that the City was negligent by not preventing Ortega-Baldis from harming him where the City allegedly knew of his violent tendencies. "In order to recover on a common law claim of negligence, a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Wuthrich v. King Cnty.*, 185 Wn.2d 19, 25, 366 P.3d 926 (2016) (internal quotations omitted). The existence and scope of a duty are questions of law. *Id.* As a general rule, Washington imposes no duty to prevent a third person from intentionally harming another. *Sheikh v. Choe*, 156 Wn.2d 441, 448, 128 P.3d 574 (2006) (citing RESTATEMENT (SECOND) OF TORTS § 315). "Additionally, under the public duty doctrine, the State is not liable for its negligent conduct even where a duty does exist unless the duty was owed to the injured person and not merely the public in general." *Id.*

Casillas relies on two exceptions to these foundational rules. The first provides that a duty arises where "a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 315(a)). Alternatively, "[o]ne who takes

charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 319)).

The Supreme Court of Washington has considered these two exceptions in a pair of cases. In the first, that court determined that a "special relationship" existed between a state psychiatrist and his or her patients, imposing a duty, where the psychiatrist determines that a patient presents a reasonably foreseeable risk of serious harm to others, to take reasonable precautions to protect anyone who might foreseeably be endangered. *Petersen v. State*, 100 Wn.2d 421, 428, 671 P.2d 230 (1983). In the second, the court held that when "a parolee's criminal history and progress during parole show that the parolee is likely to cause bodily harm to others if not controlled, the parole officer is under a duty to exercise reasonable care to control the parolee and to prevent him or her from doing such harm." *Taggart v. State*, 118 Wn.2d 195, 220, 822 P.2d 243 (1992). In essence, Casillas asks the Court to extend the *Petersen/Taggart* line of reasoning and hold that the police-criminal informant relationship creates a duty. The Court holds that under the undisputed facts of this case there was no duty to plaintiff as a matter of law.

Even if a duty existed, it would only protect against reasonably foreseeable harm. There is no genuine issue of material fact as to whether harm to the public was reasonably foreseeable from the Seattle Police Department's use of Ortega-Baldis as an informant. The police ran a number of background checks on Ortega-Baldis and confirmed that he had only been cited for a few minor traffic incidents. Getchell Decl.,

ORDER - 6

docket no. 24, Ex. C (Ortiz Tr. pp. 36-38). Detective Romero testified that he had no reason to believe that Ortega-Baldis was violent. Getchell Decl., docket no. 24, Ex. F (Romero Tr. p. 42). The only evidence Casillas can marshal that Ortega-Baldis posed a risk to the public is Detective Romero's deposition testimony that it was "too dangerous" to ask about Ortega-Baldis's family that were allegedly involved with drug trafficking. *See* Carpenter Decl., docket no. 27, Ex. 3 (Romero Tr. 44:21-45:13). Detective Romero expressed a belief that Ortega-Baldis wished to keep his family life and his informant life separate, not that Romero feared Ortega-Baldis or that Ortega-Baldis would commit some crime. Casillas fails to suggest how the fact Ortega-Baldis has relatives involved in drug trafficking makes it reasonably foreseeable that Ortega-Baldis would assault him. Imposing a duty under these circumstances would functionally render municipalities the insurers of their informants' conduct.

The other case Casillas relies upon is factually different because it involves an extremely foreseeable risk of harm to a specific individual. *See Marin v. United States*, 814 F. Supp. 1468 (E.D. Wash. 1992). In *Marin*, the Immigration and Naturalization Service ("INS") secured the release of an indicted felon in order to assist in drug trafficking investigations. INS was "fully informed as to his prior assaults [including rape] on the victim, his illegal possession of firearms, and his prior threats to kill the victim." *Id.* at 1470. While the felon agreed to stay away from the city where the victim lived, he immediately went there upon his release from federal custody. *Id.* at 1474. Despite knowing that the felon failed to report to his assignment and evidence that he was in the city where the victim lived, INS failed to issue a warrant for his arrest or otherwise

ORDER - 7

attempt to protect the woman INS knew was in danger. *Id.* After a bench trial, the *Marin* court entered judgment against the United States under a negligent supervision theory relying on *Taggart*. The critical difference is the highly foreseeable nature of the risk of harm in *Marin*, where the third-party had *already* committed a number of crimes against the victim and was known to be in her immediate vicinity.[2] There is simply no evidence that the City of Seattle knew Ortega-Baldis posed a foreseeable risk to anyone, and thus the negligence claim must fail.[3]

**Conclusion**

For the above reasons, defendant's motion for summary judgment, docket no. 23, is GRANTED. This action is DISMISSED.

IT IS SO ORDERED.

Dated this 7th day of September, 2016.

Thomas S. Zilly
United States District Judge

---

[2] In addition, the *Marin* court determined that the third-party's relationship to INS was functionally the same as the parole officer-parolee relationship. *Marin*, 814 F. Supp. at 1478. In contrast, the Seattle Police Department exerted a much more casual relationship with Ortega-Baldis, who would infrequently initiate contact with Detective Romero.

[3] Casillas's claims against the Doe defendants alleging them to be responsible for his injuries are also DISMISSED without prejudice. These defendants have not been identified or served and the Court lacks personal jurisdiction as to the Doe defendants. Fed. R. Civ. P. 4(m); *Crowley v. Bannister*, 734 F.3d 967, 974-75 (9th Cir. 2013).